UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS KELLEY,

    Plaintiff,                                  Case No. 07-13236

v.                                          District Judge Victoria A. Roberts
                                                 Magistrate Judge R. Steven Whalen

ROCCO DeMASI, CORRECTIONAL
MEDICAL SERVICES and MICHIGAN
DEPARTMENT OF CORRECTIONS BUREAU
HEALTH CARE SERVICES,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

On June 28, 2004, Plaintiff Thomas Kelley, a prison inmate in the custody of the Michigan Department of Corrections (MDOC), filed a *pro se* civil rights complaint under 42 U.S.C. §1983 in the Western District of Michigan, alleging that Defendant Dr. Rocco DeMasi and Correctional Medical Services ("CMS") were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Venue was transferred to this District on August 2, 2007. Before the Court is *Defendant Correctional Medical Services's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) and 42 U.S.C. §1997e(a)* [Docket #9] which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be DENIED.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, having previously undergone a colostomy, alleges that after complaining repeatedly of bloating, pain, rectal leakage, and constant vomiting, alleges that Defendant

DeMasi, an employee of CMS, scheduled him for a May 20, 2004 offsite surgical consultive examination. *Complaint* at 4. The appointment was cancelled on or around May 19, 2004. *Id*. Plaintiff attributes the cancellation of the offsite examination to the fact that the hospital at which his colostomy had been performed had not yet been reimbursed by the MDOC, but was later informed that the examination had been cancelled at the direction of CMS. *Id.* Plaintiff alleges a pain medication dosage increase on May 28, 2004 failed to resolve any of the above-stated symptoms, claiming that over the next few weeks he experienced a severe infection at the colostomy site, resulting in a discharge of pus, vomiting, physical exhaustion, and harassment by other prisoners. *Id.*, Attachment 3. Plaintiff's colostomy was allegedly closed on August 5, 2004.[1] *Defendant's Brief* at 3. Plaintiff seeks compensatory, punitive, and emotional damages.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." Rule 12(b) also provides that if, on consideration of a motion under paragraph (6), "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001). *See also Bell Atlantic Corp. v. Twombley*, —U.S.—, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

---

[1] But a Step II grievance response places the colostomy closure procedure on September 22, 2004. *Docket #9*, Exhibit B at pg. 50 of 80.

A dismissal for failure to state a claim under Rule 12(b)(6) is generally a dismissal with prejudice. However, a dismissal for failure of a prisoner to exhaust administrative remedies under 42 U.S.C. §1997e(a) is a dismissal without prejudice. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). In *Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007), the Supreme Court suggested, in dicta, that failure to exhaust might be a basis for dismissal under Rule 12(b)(6). However, in *Pointer v. Wilkinson*, 502 F.3d 369 (6th Cir. 2007), the Sixth Circuit found that a dismissal based on exhaustion may be distinct from a dismissal for failure to state a claim upon which relief may be granted. *See also Snider v. Melindez,* 199 F.3d 108, 112 (2d Cir.1999) (concluding that failure to state a claim as used in § 1997e(c) and § 1915(g) does not include failure to exhaust administrative remedies). The distinction has no practical effect in this case.[2] Whether categorized as a 12(b)(6) motion or otherwise, the question in this motion is whether the Defendant has carried his burden of showing that the Plaintiff failed to exhaust his administrative remedies.

**B.    28 U.S.C. §1997e(a)**

Under the Prison Litigation Reform Act (PLRA) of 1996, specifically 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under § 1983...by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12(2002); *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 819, 149 L.Ed.2d 958 (2001). Furthermore, "exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*,

---

[2]In some cases, the distinction may effect a plaintiff's future request for IFP status, in that a Rule 12(b)(6) dismissal, with prejudice, would arguably count against him in a "three strikes" analysis under 28 U.S.C. §1915(g).

548 U.S. 81,92, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). In *Woodford*, the Supreme Court defined "proper exhaustion" as requiring "compliance with an agency's deadlines and other critical procedural rules...." *Id.*, 548 U.S. at 90. Thus, whether a claim is "properly exhausted" under the PLRA requires an examination of the particular institution's administrative rules and regulations regarding prisoner grievances.

However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock, supra*, 127 S.Ct. at 921. Under *Jones*, it is Defendant's burden to assert non-exhaustion as an affirmative defense. *Id.*; *Grinter v. Knight*, __F.3d__, 2008 WL 2444809 (6th Cir. 2008). *Jones v. Bock* overruled a long line of Sixth Circuit cases that placed the burden of pleading and supporting exhaustion on plaintiffs.

## III. ANALYSIS

Defendant CMS argues that dismissal is appropriate for multiple reasons. CMS alleges first that Plaintiff failed exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). *Defendant's Brief* at 6; second, that Plaintiff has failed to state that CMS's policy, practice, or procedure caused the alleged deliberate indifference to his civil rights. *Id.* at 14 (*citing Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)); and third, that Plaintiff's claim is barred by the statute of limitations. *Id.* at 17.[3]

A. **Exhaustion of Administrative Remedies**

1. **The MDOC Grievance Procedure**

The MDOC grievance procedure in effect during the time in question was set forth

---

[3]Because Defendant's statute of limitations argument is more easily dispatched, the Court will discuss this argument before proceeding to the *Monell* argument.

in MDOC Policy Directive (PD) 03.02.130. The grievance procedure consists of four acts an inmate must undertake prior to seeking judicial review, each with specific time limits. First, within two business days after becoming aware of a grievable issue, the inmate must attempt to verbally resolve the dispute with those involved. If such an attempt is not possible, or if it is unsuccessful, the inmate must then file a Step I grievance form within five days. The prison staff is required to respond in writing within 15 days, unless an extension is granted by the grievant. If the inmate is not satisfied with the response, he may request a Step II appeal form within five days, and has an additional five days to file it. Prison staff must respond within 15 days.

If the inmate is dissatisfied with the result at Step II, he or she has ten business days to appeal to Step III. The Step III appeal is handled by the MDOC Director or his designee at the Prisoner Affairs Section, Office of Program Services, in Lansing, Michigan. The Step III response concludes the standard administrative process.

Paragraph "U" of the Policy Directive states, "Time limitations shall be adhered to by the grievant and staff in all steps of the grievance process." It further states that "[g]rievance and grievance appeals at all steps shall be considered filed on the date sent by the grievant."

### 2. Defendant Has Not Established That Plaintiff Did Not Exhaust His Administrative Remedies

In an apparent attempt to bolster its argument that Plaintiff did not exhaust his grievances before filing suit, Defendant submits a total of 13 grievances filed by Plaintiff between 2004 and 2007 on issues both related and unrelated to the present suit. *Docket #9* at Exhibit B, pgs. 1-80. However, only one grievance, which the Plaintiff also attached to his complaint, is pertinent.[4] Grievance No. MRF-04-0500652-12I, filed at Step I on May 19,

---

[4] This was the only grievance the Plaintiff attached his complaint; he omitted the many irrelevant grievances submitted by the Defendant.

2004, mirrors the allegations in the Complaint, stating that Defendant DeMasi cancelled Plaintiff's appointment for a consultive examination, despite the fact that he was experiencing debilitating and painful physical conditions as a result of colostomy complications. Hence, the Court need only consider this grievance.

### a.) Failure to Name CMS at Step I

I disagree that Defendant has met its burden to show that Plaintiff failed to exhaust this claim. Defendant contends that Plaintiff was non-compliant with MDOC's grievance procedure in failing to name CMS at Step I. *See* MDOC Policy Directive ("P.D.") 03.02.130, ¶ T ("Information provided shall be limited to the facts involving the issue being grieved (i.e.., who what, where, why, how")).[5] Step I's omission of CMS does not mandate dismissal. First, although CMS is not named at Step I of the grievance, Plaintiff was apparently not aware at the time he filed at Step I that CMS had denied his access to an outside consultation. In fact, the July 15, 2004 Step II response informed Plaintiff, apparently for the first time, that "CMS did not approve the consultation." *Docket #9*, Exhibit B at 27 of 80.[6] Moreover, although Plaintiff did not name CMS at Step I, he effectively put CMS on notice by filing his Step I grievance against CMS employee Defendant DeMasi.

Alternatively, because the MDOC was apparently unable to override CMS's decision to withhold a consultive examination, there is a question as to whether exhaustion was futile

---

[5] MDOC Policy Directive 03.02.130, effective December 19, 2003 (although since amended on July 9, 2007) is applicable to the facts at hand.

[6] Noting that "prisoners may not be able to learn the names of all persons involved in a situation given prisoners' limited access to information and the short time within which they must file a Step I grievance," *Contor v. Caruso,* 2008 WL 878665, *3 (W.D.Mich. 2008), found that the grievance "sufficiently put prison officials on notice of his claim against a [CMS] employee."

and therefore not required. The Step II response informs Plaintiff that "[s]pecialty appointments and consultations cannot be scheduled without the approval of our specialty service provider CMS." *Id. See* P.D. 03.02.130 ¶F, F(3)("Issues not within the authority of the Department resolve. . . .shall be rejected by the Grievance Coordinator.")[7]

**b.) Failure to Submit a Step III Grievance Within 10 Days of a Step II Response**

The March 4, 2005 Step III grievance response states that Plaintiff's August 18, 2004 Step III grievance was untimely and thus rejected. The response states as follows:

> "Step III appeals are to be received ten business days from the date of Step II response receipt. Grievant does not dispute receiving Step II response on July 15, 2004. His appeal therefore should have been received no later than 7-29-04. This appeal is untimely and therefore rejected. Note that the issues presented were [appropriately] addressed in Step I and II."

Docket #9, Exhibit B at 25 of 80.

P.D. 03.02.130 ¶HH requires states that if "a grievant is dissatisfied with the response received at Step II" he is required to submit a Step II grievance within 10 business days. Plaintiff's Step III grievance was submitted on August 18, 2004 - 24 business days after receiving the Step II response. The grievance procedure contemplates extensions of up to 15 days upon written approval. *Id.* at ¶U.

The July 15, 2004 Step II response concludes by directing Plaintiff to "check with health care in about 7 to 10 days to learn the outcome" of CMS's decision regarding an outside consultation. *Docket #9*, Exhibit B at 27 of 80. In light of the fact that Plaintiff was specifically directed to await CMS's decision for up to ten days (presumably business days), he could not be expected to wait ten days and then in the event of an unfavorable response

---

[7] Notwithstanding Plaintiff's exhortation to the MDOC ("stop blaming CMS,") CMS does not deny that it was responsible for the decision to refuse Plaintiff a surgical consultation. *Docket #9*, Exhibit B at 26 of 80.

from CMS dash off a Step III grievance on the same day. This would defeat the purpose of the 10-day period allotted by the Policy Directive. Because Plaintiff was directed by the Step II respondent to wait up to 10 days before checking with health care, he would be entitled to up to addition ten days following the decision. An additional 10 days to submit Plaintiff's Step III grievance places the due date at August 12, 2004. This would still place Plaintiff's Step III grievance outside the 10-day deadline.

However, aside from the fact that Plaintiff apparently waited for CMS's decision for up to ten days, additional grievance material supplied by Defendant indicates that from July 12 forward, Plaintiff experienced particularly severe symptoms relating to the colostomy due to an infection. *Docket #9*, Exhibit B at 32 of 80 (MRF-04-07-0868-012F). According to this Step II response, although Plaintiff was referred to emergency services on July 12, 2004, antibiotics were not provided until July 20, at which time medical staff discovering that an incorrect antibiotic had been ordered, requiring Plaintiff to wait for further treatment. *Id.* Moreover, Defendant's summary of another grievance filed by Plaintiff indicates that Plaintiff's colostomy was closed on August 5, 2004.[8] Defendant's Brief at 3 (*citing* MRF-04-07-0867-12e1). Both Plaintiff and Defendant are silent as to whether Plaintiff applied for or received an extension for the filing of a Step III grievance as allowed by P.D. 03.02.130¶U. However, if in fact Plaintiff was fighting a severe infection culminating in hospitalization and the colostomy closing on August 5, 2004, tolling of the 10-deadline is

---

[8] Another Step II grievance response from a separate grievance places the colostomy closure procedure on September 22, 2004, *Docket #9*, Exhibit B at pg. 50 of 80. However, this response notes that Plaintiff was examined by a surgeon on July 30, 2004 at Duane Waters Hospital, at which time, a barium enema and the colostomy closure was ordered. *Id.* It is unclear whether Plaintiff received inpatient or outpatient treatment.

appropriate.[9] Assuming that Plaintiff is entitled to an extension of up to 15 days to file the Step III grievance for good cause, his August 18, 2004 filing indicates that this submission was timely.[10] Further and just as significantly, Defendant does not allege it was prejudiced by Plaintiff's 14-day delay in filing his Step III grievance. Again, under *Jones v. Bock*, it is the Defendant's burden to raise and demonstrate non-exhaustion as an affirmative defense. As such, the defense of non-exhaustion must be proved by a preponderance of the evidence. *Lewis v. District of Columbia*, 535 F.Supp.2d 1 (D.D.C. 2008). The grievance material submitted by Defendant is insufficient to meet its burden of proving by a preponderance of the evidence that Plaintiff did not properly exhaust his administrative remedies.

### B. Statute of Limitations

Defendant argues correctly that "[t]he personal injury statute of limitations in Michigan establishes the statutory period for actions arising under 42 U.S.C. §1983," noting that "the pertinent statute of limitations" for filing suit is three years after the time of injury.

---

[9]

The determining factors to be considering tolling a statute of limitations are instructive here: "1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5)the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Truitt v. County of Wayne,* 148 F.3d 644, 648 (6th Cir 1998 ). Of these factors, I find that Plaintiff's diligence in pursuing his rights and the lack of prejudice to Defendant (along with the apparent impossibility of completing a grievance while undergoing aggressive medical treatment) weighs in favor of tolling the Step III grievance deadline.

[10]

Plaintiff also argues persuasively that the Step III response, while denying the grievance on the basis on timeliness, acknowledged the merits of the grievance by noting that it was "appropriatley (sic) addressed in Step I and II." *Docket #9,* Exhibit B at 25 of 50. *See Ellis v. Vadlamudi,* — Fed. Supp. 2d — , 2008 WL 2705503, *7 (E.D.Mich.2008)(Lawson, J.)(*citing Patel v. Fleming,* 415 F.3d 1105, 1111 (10th Cir.2005)) ("[I]t is apparent that the prison official who reviewed the Step II grievance addressed the substance of the complaint and found merit in the plaintiff's complaint of delayed or improper medical treatment. The courts that have considered the issue have held that a prisoner who files a late complaint that is nevertheless addressed by the prison system has properly exhausted his remedies.")

*Defendant's Brief* at 17. As such, Defendant contends that because the grievance pertains to the canceling of a consultive examination scheduled for May 20, 2004, the statute of limitations had expired at the time he filed his suit June 2, 2007. *Id.* at 17-18.

Federal courts should generally apply state personal injury statutes of limitations to § 1983 claims. *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *See also, Carroll v. Wilkerson,* 782 F.2d 44, 45 (6th Cir.1986). M.C.L. § 600.5805(10) states that in Michigan, the statute of limitation for personal injury claims is three years.

However, Plaintiff's claim is nonetheless viable. In *Brown v. Morgan,* 209 F.3d 595, 596 (6th Cir.2000), the court held that the statute of limitations was tolled for the period of time required to complete administrative remedies, reasoning that since 42 U.S.C. § 1997e(a) "unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation," the applicable statute of limitations should be tolled while the prisoner pursues state remedies.

Plaintiff filed his Step I grievance on May 19, 2004. The Step III response was issued on March 4, 2005, tolling the statute of limitations for over nine months. Even assuming that the statute of limitations was not tolled in excess of the 90 calender day limitation for the grievance procedure set forth in P.D. 03.02.130 ¶U, the statute of limitations did not expire until August 17, 2007, placing the June 2, 2007 filing easily within the limitation period.

### C. The *Monell* Claim

Defendant argues that Plaintiff has failed to state at claim that CMS's policy, practice, or procedure caused the alleged deliberate indifference to his civil rights. Defendant's Brief at 14 (*citing Monell v. Department of Social Services of City of New York,*

436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).[11]

"A private entity employed by the state to provide medical services to its prison inmates may be sued under § 1983 as one acting 'under color of state law.'" *Titlow v. Correctional Medical Services,* 2008 WL 2697306, *13 (E.D.Mich.2008)(O'Meara, J. *adopting* Komives, M.J.); *West v. Atkins,* 487 U.S. 42, 54, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). "As such, CMS can be sued for violations of the plaintiff's civil rights under Section 1983." *Maddle v. Correctional Medical Services, Inc*. 2008 WL 839715, *9 (M.D.Tenn.2008); *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir.1993). In *Monell, supra,* the Supreme Court held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory," and that for there to be municipal liability, the alleged unconstitutional violation must implement or execute a policy statement, ordinance, regulation or *decision* officially adopted and promulgated by that body's officers, or be taken pursuant to governmental custom. *Monell,* 436 U.S. at 690-692.

"Nevertheless, a municipal policy need not be formal or written to bring § 1983 into play." *Chancellor v. City of Detroit,* 454 F.Supp.2d 645, 660 (E.D.Mich. 2006)(Gadola, J.). "It can be found in 'a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute custom or usage with the force of law.'" *Id. (Citing City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (internal citations omitted).

Plaintiff has sufficiently alleged that Defendant CMS's policy and/or practice was

---

[11] Defendant does not argue that Plaintiff has failed to state a claim of deliberate indifference, but rather that Plaintiff has not stated a "policy, practice, or custom" allegation against CMS. *Defendant's Brief* at 14. Therefore, the Court will limit its discussion to whether Plaintiff has sufficiently stated that CMS's "policy, practice, or procedure" was instrumental in the alleged deprivation of his Eighth Amendment rights.

instrumental in violation of his Eighth Amendment rights. Defendant faults Plaintiff for the omission of the words "policy" or "practice" from his allegations against CMS. This *pro se* Complaint, presenting its allegations in narrative style rather than in paragraphs, is nonetheless easily construed to state a *Monell* "policy" or "practice" claim. The Complaint alleges that Defendant DeMasi, a CMS employee, scheduled his May 20, 2004 consultive examination with a specialist despite the fact that Plaintiff experienced ongoing rectal leakage and continual vomiting as a result of complications from a previous colostomy. *Complaint* at 4. The Complaint states further that Plaintiff was informed via the Step I grievance response that CMS was responsible for denying him access to a specialist. *Id.* Plaintiff alleges that he was given only an increase in pain medication dosage as his condition markedly deteriorated over the next few weeks at the onset of an infection. He alleges that he was informed on July 15, 2004 that CMS had not yet determined whether he required a consultive examination. In particular, the July 15, 2004 Step II grievance response cited in the Complaint states flatly that "[s]pecialty appointments and consultations cannot be scheduled without the approval of our specialty service provider CMS. CMS did not approve the consultation." *Docket #9*, Exhibit B at 27 of 80.

Despite the absence of the magic words "policy" or "practice" from the Complaint, Plaintiff clearly alleges an unconstitutional practice, stating that CMS, even after being informed by Defendant DeMasi that Plaintiff's condition was taking a turn for the worse, denied him apparently critical access to a specialist's consultation. In other words, CMS is alleged to have made an official *decision* that resulted in a constitutional violation. *Monell*, 436 U.S. at 690-92. Indeed, Defendant CMS makes no bones about the fact that it was the sole decision-maker in denying Plaintiff the specialist's consultation. Moreover, given the fact that no discovery has occurred, Defendant's related assertion that "there remains no

genuine issues of material fact" is premature at best. *Defendant's Brief* at 17. The reasoning of *Titlow, supra,* in denying a 12(b)(6) motion by CMS is highly applicable here: "The analysis of whether the decision to deny plaintiff a surgical consult was made or approved by a final policy-maker may best be addressed on summary judgment." *Titlow, supra,* WL 2697306, at *18 ; *Meyers v. City of Cincinnati,* 14 F.3d 1115, 1117 (6th Cir.1994). "Any suspicion about the type of policy or custom, if any, which resulted in the decisions at issue here may be examined during discovery. Its existence may be challenged during summary judgment." *Id.* At present, Defendant CMS has presented no evidence in support of its summary judgment-like argument that "no genuine issues of material fact" exist. Accordingly, the present motion to dismiss should be denied.

## IV. CONCLUSION

For these reasons, I recommend that Defendant CMS's Motion to Dismiss [Docket #9] be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.

The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                          s/R. Steven Whalen
                                          R. STEVEN WHALEN
                                          UNITED STATES MAGISTRATE JUDGE

Dated: August 26, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 26, 2008.

                                          s/Susan Jefferson
                                          Case Manager